(No. 2293— )

Harry H. Sefried, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed September 8, 1942.*

Clarence B. Davis, for claimant.

George F. Barrett, Attorney General; Robert V. Ostrom, Assistant Attorney General, for respondent.

Eckert, J.

On June 21, 1933, the claimant, Harry H. Sefried, was employed by the respondent as foreman tinner at the Kankakee State Hospital, at Kankakee, Illinois. While repairing the cupola of the hospital cannery, the ladder upon which he was working slipped from a second-story roof and he fell to the ground, a distance of thirty feet, sustaining a fracture of the last lumbar vertebra. He was hospitalized from June 21, to July 28, 1933, under the care of Dr. J. J. Madden, and returned to work on August 2, 1933. The cost of this medical and hospital service was paid by the respondent. Claimant, however, alleges that as a result of the accident he was obliged to expend $5.00 for a supporting belt, $12.00 for eye glasses, and $5.00 for special foods; that he has also paid for medical services, since his discharge from the hospital, $10.00 to Dr. Hollis E. Potter, Chicago, Illinois, $50.00 to Dr. Lewis J. Pollock, Chicago, Illinois, and $35.00 to Dr. W. T. McNary, East St. Louis, Illinois.

Claimant was first employed by the respondent at the Kankakee State Hospital on May 15, 1931, as a tinner at $1.25 per hour for a forty-eight hour week, and on Septem-

ber 1, 1931, was made foreman. In April, 1932, his wage was reduced to $1.00 per hour for a twenty-four hour week, or approximately $100.00 per month. Claimant alleges that when he became foreman tinner, his compensation under the Civil Service schedule should have been increased ten cents per hour; that in fact it was not so increased; that from the date of his promotion to October 1, 1934, he worked for the respondent four thousand nine hundred and twenty hours; and that the respondent is therefore indebted to him for unpaid wages in the sum of $492.00.

Claimant testified that he is no longer able to climb ladders, to go upon roofs, or otherwise to perform his duties; that his present activities are confined to desk work, such as laying out jobs, specifying materials, and planning construction or repair work; that he still suffers pain and physical discomfort and certain functional disabilities; that the use of his limbs is uncertain; that he can walk safely only with a cane; and that he has been advised such condition is permanent. He receives, however, the same wages which he received prior to the injury.

Dr. J. J. Madden, called as a witness for claimant, testified that following the injury claimant walked into the hospital ward complaining of pain and stiffness in his back and left side; that he had several minor superficial scratches and abrasions of the left elbow, ankle, and buttocks, and a slight discoloration of the left chest. An x-ray taken shortly afterward disclosed a fracture of the last lumbar vertebra. The fracture was of linear type, apparently incomplete, and there was no displacement of the fragments. His recovery was entirely satisfactory. On cross-examination Dr. Madden testified that it would be very difficult for him to reconcile claimant's subsequent disabilities with the injury as he found it.

Dr. Francis J. Sullivan, also called as a witness on behalf of the claimant, testified that he took a series of x-ray pictures at intervals from June 21, 1933, when claimant entered the hospital, to January 18, 1934; that the x-ray taken on this latter date showed the fracture apparently healed with callous formation. From these pictures, Dr. Sullivan found it difficult to account for claimant's alleged disabilities, and stated that he would not expect claimant's injury to be permanent or to produce any organic disturb-

ance of any nerve structure, although it might produce a physical effect. He also testified that the x-rays would not show any pressure upon the nervous structure.

On March 5th and 6th, 1941, eight years after the accident, claimant was examined by Dr. Henry B. Thomas of Chicago. Dr. Thomas reported that when claimant was asked the location of the painful place in his back, he pointed to an area much lower than that of the lumbar vertebra which had been fractured. Dr. Thomas found a healed fracture of the fourth lumbar vertebra, a snapping right hip not shown to be a result of the injury, a questionable right sacro-iliac irritation, and, from claimant's own statement, some functional disturbance following the injury. The prognosis was: complaints should clear up upon: (1) settlement pending suit; (2) operation of right hip; (3) treatment of back.

Claimant seeks an award for salary which he claims to be due him as a result of his promotion to the position of foreman tinner, but for which promotion he never received additional compensation. The record, however, fails to sustain this contention, and no ground is shown upon which to justify an award for such additional compensation.

Claimant also seeks an award under the provisions of the Workmen's Compensation Act for his alleged disabilities. At the time of the accident, claimant and respondent were operating under the Act, and notice of the accident and claim for compensation were made within the required time. The accident arose out of and in the course of the employment. Claimant, therefore, was entitled to receive for temporary total disability, from June 21, 1933, to August 2, 1933, a period of six weeks, $12.00 per week, or a total sum of $72.00. This amount, however, was paid to claimant by the respondent during the first thirty days of his hospitalization, so that he is not entitled to any further award for such disability.

The record does not justify an award for partial permanent disability. Injuries, to be compensable under the provisions of the Workmen's Compensation Act, must be proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee. From such evidence in this record, it appears only that the claimant suffered an apparently incomplete fracture of a vertebra, which subsequently healed, and in which there was no dis-

placement of fragments, and which was insufficient to account for his present alleged disability. Furthermore, to obtain an award for partial permanent disability, under Section 8, Subsection (d) of the Act, there must be proof of a difference between the average amount which claimant earned before the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident.. The record contains no proof of any such difference in claimant's earning capacity. Nor is there sufficient evidence to support an award for impaired vision or need of eye glasses, or to sustain the claim of functional disability.

The moneys which claimant expended for medical services in consultation with Dr. McNary, Dr. Potter, and Dr. Pollock were secured at his own election, and apparently were not necessary nor reasonably required to cure or relieve from the effects of the injury. They must therefore be at his expense. Claimant, however, is entitled to be reimbursed for the supporting belt and the special foods which he purchased in the total sum of $10.00.

Award is therefore made to the claimant in the sum of $10.00 which is payable forthwith.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30th, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for in such Act.